*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                   :
DEBORAH JILL CHITESTER             :
            Plaintiff,             : Civil Action No. 17-12650(FLW)
                                   :
       v.                          :
                                   :               **OPINION**
DEPARTMENT OF CHILD PROTECTION     :
PERMANENCY,                        :
            Defendant.             :
_____:

**WOLFSON, United States District Judge:**

Plaintiff Deborah Jill Chitester ("Plaintiff"), proceeding *pro se*, brings this suit against Defendant Department of Child Protection Permanency (the "DCPP"), alleging that the DCPP illegally removed Plaintiff's child from her care, because the agency perceived Plaintiff as disabled and discriminated against her in violation of Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12131-12134 and Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"). Based on the same conduct, Plaintiff claims that the DCPP violated her civil rights and caused extreme emotional harm.[1] In the instant matter, Defendant moves to dismiss Plaintiff's § 1983 and state tort claim based on Eleventh Amendment sovereign immunity. With respect to

---

[1] To the extent that Plaintiff intended to bring any additional claims, her Complaint cannot be construed as such. *See* ECF 27 at 1.

1

Plaintiff's disability-related claims, Defendant moves for dismissal on timeliness grounds. Plaintiff opposes the motion. For the reasons set forth below, Defendant's motion to dismiss is **GRANTED** in its entirety; Plaintiff's § 1983 and tort claims against the DCPP are barred by sovereign immunity, and Plaintiff's causes of action under the ADA and the Rehabilitation Act are time barred. Those claims against the DCPP are dismissed with prejudice, and the DCPPP is dismissed as a defendant. However, Plaintiff is given leave to amend her Complaint within 30 days from the date of the Order accompanying this Opinion; Plaintiff may only amend her § 1983 and tort claims to the extent that asserts those claims against an individual officer of the DCPP, in that person's individual capacity only.

**BACKGROUND**

The following allegations are taken from Plaintiff's Complaint and are assumed as true.[2] Plaintiff is the divorced mother of Lillian, her 11-year-old daughter. ECF 1-3 at 1. On December 23, 2014, Lillian was removed from Plaintiff's custody and relocated to live with the father, John Chistester, following the DCPP's investigation, which allegedly revealed that the child was living in a harmful environment. *Id.* It appears that Plaintiff

---

[2] I note that the allegations contained in Plaintiff's Complaint are difficult to understand and discern, but I have attempted to construe them liberally in light of Plaintiff's *pro se* status.

alleges that the DCPP removed her child because the agency believed that Plaintiff suffered from certain health issues and regarded Plaintiff as being disabled, which, Plaintiff claims, were based on inaccurate assumptions without clinical diagnosis. ECF 34 at 10. Specifically, Plaintiff alleges that the DCPP incorrectly perceived Plaintiff as a hoarder, and as a result, erroneously concluded that Plaintiff's house was not habitable for Lillian. ECF 27 at 1.

In that respect, Plaintiff alleges that the "DCPP had regarded Plaintiff as having behaviors that adversely impacted [the] child development of [the] daughter . . . [but] Plaintiff was no hoarder [and] had no clinical diagnosis . . . either." ECF 27 at 2. Plaintiff goes on to allege that "the DCPP regarded Plaintiff as disabled as per the ADA Title II and took her child for this reason with no accommodations . . ." *Id.* Plaintiff claims that Christine Idland[3] testified that her understanding when she took over the case was that there was some type of "hoarding issue." ECF 34 at Ex. p. 3.

According to Plaintiff, as a result of the DCPP's discriminatory mischaracterization, Plaintiff was treated unlawfully under the ADA and Rehabilitation Act by being disqualified from receiving certain services and programs offered

---

[3] It appears that Idland was a representative from the DCPP, who testified at Plaintiff's custody hearing.

3

by the DCPP that could have assisted Plaintiff in maintaining custody of her daughter. *Id.* In other words, Plaintiff alleges that as a result of the DCPP labeling her as having a hoarding disability, the DCPP did not offer her adequate accommodations to alleviate her clutter problems. *Id.* Plaintiff submits that "there were no attempts at reunification . . . [there were] no accommodations made, [and] no services offered AFTER removal." ECF 34 at 1. Plaintiff further alleges:

> The Division's assistance fellas far short. DCPP offered the assistance of one cleaning agency and then failed to resolve the administrative issue arising over the number of persons needed to clean the home and the payment for the service. After this one referral failed, DCPP walked away from its responsibility to assist [Plaintiff] in cleaning the home determining that it was too difficult to find an agency to deal with this level of clutter.

*Id.* at Exhibit p. 1.

Plaintiff alleges that the denial of programs and services violates the ADA and the Rehabilitation Act, under which Plaintiff is seeking injunctive relief and monetary damages against the DCPP. *Id.* Plaintiff also brings a § 1983 claim, as well as a state law claim for intentional infliction of emotional distress ("IIED").

In the instant matter, Defendant moves to dismiss Plaintiff's § 1983 and IIED claims under Fed. R. Civ. P. 12(b)(1), based on Eleventh Amendment sovereign immunity, and Defendant seeks dismissal of Plaintiff's disability-related claims based on, *inter alia*, the statute of limitations.

4

**DISCUSSION**

**I. Standard of Review**

**A. Motion to Dismiss Pursuant to Rule 12(b)(1)**

Rule 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). An assertion of Eleventh Amendment immunity is a challenge to a district court's subject matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.") (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). Typically, when jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, because "Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense," and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Christy v. Pennsylvania Turnpike Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994); *see also Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999); *Maliandi*

5

*v. Montclair State Univ.*, No. 14-01398, 2014 U.S. Dist. LEXIS 104573, 2014 WL 3778259, at *1 (D.N.J. July 31, 2014).

In evaluating a Rule 12(b)(1) motion to dismiss, the court must determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject matter jurisdiction in fact, apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *id.* at 891). However, "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.* at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178-79, 36 V.I. 392 (3d Cir. 1997)). Here, Defendant mounts a factual attack to subject matter jurisdiction, because the parties primarily dispute whether the DCPP qualifies for sovereign immunity as an arm of the state. *See Bowers v. NCAA*, 475 F.3d 524, 546 (3d Cir. 2007) (determining whether an agency is entitled to Eleventh Amendment immunity can be "a fact-intensive review that calls for individualized determinations."). Therefore, in reviewing this question of sovereign immunity, it is appropriate for the Court to examine evidence outside the pleadings, if necessary.

**B. Motion to Dismiss Pursuant to Rule 12(b)(6)**

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citations and quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief . . . [a] complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the .

. . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citations and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 2016 U.S. App. LEXIS 366, at *10 (3d Cir. Jan. 11, 2016) (citations and quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citations and quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they

8

plausibly give rise to an entitlement to relief." *Id*. at *10-11 (citations, quotations, and brackets omitted).

**III. Eleventh Amendment Immunity**

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The amendment affords states and state agencies immunity from suits brought by citizens in federal court, regardless of whether legal or equitable relief is sought. *Pennhurst*, 465 U.S. at 100-01; *see also Thorpe v. New Jersey*, 246 Fed. Appx. 86, 87 (3d Cir. 2007) ("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought . . . .").

Eleventh Amendment immunity from suit also extends to agencies, departments, and officials of the state when the state is the real party in interest. *Alabama v. Pugh*, 438 U.S. 781, 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d. Cir. 2002); *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001). In *Fitchik v. New Jersey Transit Rail Operations, Inc.*, the Third Circuit determined that the state is a party of interest when "the judgment sought

9

would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." 873 F.2d 655, 659 (3d. Cir. 1989). In short, sovereign immunity is appropriate if the named defendant is an "arm of the state." *Davis v. Twp. of Lakewood*, No. 03-1025, 2005 U.S. Dist. LEXIS 16420, at \*3 (D.N.J. Aug. 4, 2005) (citing *Chisolm*, 275 F.3d at 323).

The *Fitchik* court also set forth the following three-factor test to determine whether a defendant is indeed an "arm of the state" entitled to sovereign immunity: "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." 873 F.2d at 659; *see also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 948 F.Supp. 400, 409 (D.N.J. 1996) (precluding suit where "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration" (citations and quotations omitted)). When applying this three-factor test, the Third Circuit historically looked at the first factor, state-treasury, as "most important." *Karns v. Shanahan*, 879 F.3d 504, 513 (3d Cir. 2018) (citing *Fitchik*, 873 F.2d at 659) However, the factors have been "recalibrated" in light of the Supreme Court's decision in *Regents of the Univ. of Cal. v. Doe*. 519 U.S. 425, 431

(1997) (finding "it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant" to the Eleventh Amendment inquiry); *Karns*, 879 F.3d at 513. Under this new approach, all the factors are to be given equal weight. *Cooper v. Se. Pa. Transp. Auth.*, 548 F.3d 296, 302 (3d Cir. 2008); *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239 (3d Cir. 2005).[4]

The Third Circuit, as well as courts in this district, have long held that the DCPP, formerly known as DYFS, is an arm of the state for sovereign immunity purposes. *Howard v. N.J. Div. of Youth & Family Servs.*, 398 Fed. Appx. 807, 811-12 (3d Cir. 2010) ("DYFS is immune from suit under the Eleventh Amendment"); *Mammaro v. The New Jersey Div. of Child Permanency & Prot.*, No. 13-6483, 2015 U.S. Dist. LEXIS 5321, at *4 (D.N.J. Jan. 15, 2015) ("courts in this state have long held that DYFS is, 'beyond dispute,' an arm of the state for sovereign immunity purposes" (quoting *Sweet-Springs v. Dep't of Children and Families*, No. 12-706, 2013 U.S. Dist. LEXIS 84620, at *5 (D.N.J. June 17, 2013))); *Newson v. Dep't of Children & Families Div. of Child Prot. & Permanency*, No. 14-

---

[4] For the first factor, the most important question remains whether any judgment would be paid from the state treasury, and this generally proves dispositive for the first factor only. *Fitchik*, 873 F.2d at 659; *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006).

11

5708, 2014 U.S. Dist. LEXIS 143007, at *4 (D.N.J. Oct. 8, 2014); *Simmerman v. Corino*, 804 F. Supp. 644, 650 (D.N.J. 1992).

Moreover, Plaintiff has not presented any relevant changes in the status of the DCPP under state law that would alter the sovereign immunity analysis and the weight of authority on the issue. Indeed, a judgment against the DCPP would be partially satisfied by the New Jersey state treasury. *Antonelli v. Div. of Youth & Family Servs.*, No. 17-5519, 2018 U.S. Dist. LEXIS 75663, at *6 (D.N.J. May 4, 2018) ("Any judgment against it would come out of the state treasury"). Additionally, New Jersey's statutes classify the DCPP as a "principle department" of the executive branch of the state government and it is funded by the state treasury. *See e.g.,* N.J.S.A. 52:9H-3 ("all needs for the support of the State Government and for all other State purposes shall be provided for in one general appropriation law"); N.J.S.A. 52:18A-42 ("the State Treasurer, with the approval of the Governor, may make transfers of appropriations, in whole or in part, available and to become available to any department, officer or agency affected by the provisions of this act."). Finally, the final two *Fitchik* factors — the status of the entity under state law and the degree of autonomy enjoyed by the entity — also weigh in favor of finding that the DCPP is an arm of the state. *Simmerman v. Corino*, 804 F. Supp. 644, 650 (D.N.J. 1992) ("it seems beyond dispute that both entities [DYFS and the State Police] are arms of the State.");

*Mammaro*, 2015 U.S. Dist. LEXIS 5321, at *4 (finding that the status of the entity under state law and degree of autonomy factors point to the DCPP being an arm of the state); *Zimmer v. N.J. Div. of Child Prot. & Permanency*, No. 15-2524, 2016 U.S. Dist. LEXIS 6410, at *18 (D.N.J. January 20, 2016) ("the status of the entity under state law and the degree of autonomy enjoyed by the entity [DCPP], clearly weigh in favor of finding that the DCPP is an arm of the state."); *New Jersey Div. of Youth & Family Servs. v. D.C.*, 571 A.2d 1295 (1990). Therefore, it is clear that the DCPP is an arm of the state entitled to sovereign immunity. *Id.*

However, that does not end this Court's inquiry. There are three narrow exceptions to Eleventh Amendment immunity: "1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001). Congress has not abrogated, and New Jersey has not waived, the state's sovereign immunity with respect to Plaintiff's § 1983 claims. *Quern v. Jordan*, 440 U.S. 332, 338 (1979); *Mierzwa v. United States*, 282 F. App'x 973, 976 (3d Cir. 2008) (New Jersey has not waived its Eleventh Amendment immunity with respect to Section 1983 claims in federal court) (citations omitted); *Garcia v. Richard Stockton Coll. of New Jersey*, 210 F. Supp. 2d 545, 550 (D.N.J. 2002); *see also Shine v. Merenda*, 586 F. App'x 95, 98 (3d Cir. 2014)

(affirming dismissal of Section 1983 claim as barred by sovereign immunity); *Hurst v. City of Rehoboth Beach*, 288 Fed. Appx. 20, 24-25 (3d Cir. 2008) (citing *Pennhurst*, 465 U.S. at 98; *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Quern*, 440 U.S. at 345). For these reasons, the Court finds that Plaintiff's § 1983 claim against the DCPP is barred by sovereign immunity, and consequently, the Court lacks subject matter jurisdiction over the claim.[5]

Likewise, the Eleventh Amendment's grant of sovereign immunity applies to state common law causes of action, including claims that fall within the limits of the New Jersey Tort Claims Act ("TCA"). *See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 355 n.1 (3d Cir. 1997) (noting that a claim of common law unfair competition "obviously could not be asserted successfully [against an instrumentality of the state] in light of the Eleventh Amendment"), *aff'd*, 527 U.S. 666 (1999); *Doe v. Division of Youth & Family*

---

[5] Plaintiff seemingly realizes that her § 1983 claims are barred due to Eleventh Amendment immunity, and as such, she, in her briefing, tries to amend her complaint to "add Commissioner in both official and individual capacities . . . ." ECF 27 at 1. However, she cannot amend a complaint in a brief opposing a motion to dismiss. *See Commonwealth of PA ex. Rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). However, I will provide Plaintiff with an opportunity to amend her Complaint, *see infra*, to an individual defendant in his or her official capacity. *See Melo v. Hafer*, 912 F.2d 628, 634 (3d Cir. 1990)("neither a state nor state officials sued in their official capacities for money damages are 'persons' under section 1983 . . . .")(citation omitted).

*Servs.*, 148 F. Supp. 2d 462, 492 (D.N.J. 2001) (common law negligence claim barred by the Eleventh Amendment), Indeed, the Third Circuit has held that "[t]he TCA, which allows suits against public entities and their employees in state courts, does not expressly consent to suit in federal courts and thus is not an Eleventh Amendment waiver." *Hyatt v. Cty. of Passaic*, 340 Fed. Appx. 833, 837 (3d Cir. 2009). As such, the DCPP is also entitled to sovereign immunity with respect to Plaintiff's common law IIED tort claim. *See Abulkhair v. Office of Atty. Ethics*, No. 16-3767, 2017 U.S. Dist. LEXIS 79754, at *17 (D.N.J. May 24, 2017) (dismissing plaintiff's IIED claim against defendant New Jersey's Office of Attorney Ethics because defendant is entitled to sovereign immunity in federal court).

However, there has been Congressional abrogation of state sovereign immunity with respect to Title II of the ADA and Rehabilitation Act. "In order for Congress to validly abrogate state sovereign immunity, Congress must: (1) unequivocally express its intent to abrogate that immunity; and (2) act pursuant to a valid grant of constitutional authority." *Bowers v. NCAA*, 475 F.3d 524, 550 (3d Cir. 2007) (*citing Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). In that regard, Title II of the ADA provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation."

15

*Bowers v. NCAA*, 475 F.3d at 550; 42 U.S.C. § 12101(b)(4); *see generally Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) (finding that the above statutory provision was an unequivocal expression of Congressional intent to abrogate state sovereign immunity under Title II). Similarly, Congress has also abrogated state sovereign immunity under the Rehabilitation Act. *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 72 (1992) ("In the Rehabilitation Act Amendments of 1986, 100 Stat. 1845, 42 U. S. C. § 2000d-7, Congress abrogated the States' Eleventh Amendment immunity under Title IX, Title VI, § 504 of the Rehabilitation Act of 1973, and the Age Discrimination Act of 1975."). Because these sovereign immunity exceptions apply, Defendant is not entitled to sovereign immunity with respect to Plaintiff's ADA and Rehabilitation Act claims.

### B. ADA and Rehabilitation Act Claims[6]

Defendant argues that Plaintiff's disability-related claims are time barred. Title II of ADA and the Rehabilitation Act do not expressly include a statute of limitations. As such, courts look to the most closely analogous state statute of limitations to

---

[6] Plaintiff's ADA and Rehabilitation Act claims will be analyzed in tandem, because "courts use the same standards for determining whether there has been a violation of the Rehabilitation Act as they use for determining whether there has been a violation of Title I of the ADA." *Gunson v. James*, 364 F. Supp. 2d 455, 462 (D.N.J. 2005)(citing 29 U.S.C. §§ 791(g), 794(d)).

16

determine the timeliness of those claims. *Burkhart v. Widener Univ., Inc.*, 70 Fed. Appx. 52, 52 (3d Cir. 2003); *see Sameric Copr., Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). In this context, it is well established that the most appropriate limitations period analogous to Title II of the ADA and the Rehabilitation Act is the forum state's applicable personal injury statute of limitations. *Burkhart*, 70 Fed. Appx. at 53. Here, New Jersey's statute of limitations for personal injury claims is two years. N.J.S.A. 2A:14-2 ("Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within 2 years next after the cause of any such action shall have accrued.").

While state law determines the period of limitations, federal law determines accrual of a cause of action. *Jackson v. Nicoletti*, 875 F. Supp. 1107, 1109 (E.D. Pa. 1994); *Long v. Board of Education of City of Philadelphia*, 812 F. Supp. 525, 531 (E.D. Pa.), *aff'd*, 8 F.3d 811 (3rd Cir. 1993). A federal discrimination claim accrues, and the applicable statute of limitations begins to run, when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Toney v. U.S. Healthcare*, 840 F. Supp. 357, 359 (E.D. Pa. 1993)(quoting *Morse v. University of Vermont*, 973 F.2d 122, 125 (2nd Cir. 1992)); *Burkhart*, 70 Fed. Appx. at 53. In determining the accrual date of a discrimination claim under the ADA, the focus is therefore on when the

discriminatory act occurs, not when the effect of that act becomes painful. *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981); *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980); *Fiorucci v. City of Wilkes-Barre*, No. 06-1084, 2007 U.S. Dist. LEXIS 17626, at*9-10 (M.D. Pa. Mar. 14, 2007).

In this case, it appears that Plaintiff's claims are based on her allegations that the DCPP removed her child following an investigation into allegations of child abuse and neglect. According to Plaintiff, the investigation was pretexual, because the true reason for the removal was due to the DCPP's discriminatory animus towards Plaintiff's perceived disability as a "hoarder." As alleged, the discriminatory act — the removal of Plaintiff's child — took place on December 23, 2014, and Plaintiff did not file suit until December 4, 2017, which was almost one year beyond the statute of limitations period. In that regard, the statute of limitations has run on Plaintiff's ADA and Rehabilitation Act claims.

In her opposition, Plaintiff makes two arguments why her claims should not be dismissed: first, Plaintiff argues that the ADA does not contain any statute of limitations, and therefore, her claims were timely filed. Second, Plaintiff claims that she should be excused from filing late, because she was not aware of her rights and legal obligations until the end of 2016. Both of her contentions are patently without merit. With respect to

Plaintiff's first argument, as I have delineated, while the ADA does not contain a statute of limitations, New Jersey's two-year statute of limitations on personal injury claims is applicable in this context. *See Burkhart*, 70 Fed. Appx. at 52. Next, there is no case law that supports Plaintiff's bare assertion that ignorance of the law is a legitimate basis to toll the statute of limitations. In fact, the opposite is true. *See Giles v. City of Philadelphia*, 542 Fed. Appx. 121, 123 (3d Cir. 2013) ("Ignorance of the law is not a basis for tolling the statute of limitations." (citing *Sch. Dist. of Allentown v. Marshall*, 657 F.2d 16, 21 (3d Cir. 1981)). Accordingly, because Plaintiff filed her ADA and Rehabilitation Act claims outside of the two-year applicable statute of limitations period, those claims are time barred, and therefore, dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**. Plaintiff's § 1983 and IIED tort claims against Defendant are barred by Eleventh Amendment sovereign immunity. Additionally, Plaintiff's claims based on Title II of the ADA and the Rehabilitation Act are timed barred. Those claims against the DCPP are dismissed with prejudice. However, Plaintiff is given leave to amend her Complaint within 30 days from the date of the Order accompanying this Opinion; Plaintiff may only amend her § 1983 and IIED claims to the extent she asserts those claims against

an individual officer of the DCPP, in that person's individual capacity only.


Dated:   December 17, 2018                /s/ Freda L. Wolfson
                                          Hon. Freda L. Wolfson
                                          U.S. District Judge